# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

ERNESTO M. CONTRERAS,

Petitioner,

v.

MARTIN GAMBOA, Warden,[1]

Respondent.

Case No. 20-6206-BLF (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; INSTRUCTIONS TO CLERK**

Petitioner has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2016 criminal judgment and sentence. Dkt. No. 1. Respondent filed an answer on the merits. Dkt. No. 9. Petitioner filed a traverse. Dkt. No. 11. For the reasons set forth below, the petition is **DENIED**.

## I. BACKGROUND

On June 28, 2016, after approximately eight days of evidence and argument and eight hours of deliberating—*see* dkt. No. 10-1 at 16-122—a Santa Clara County Superior Court jury found Petitioner guilty of two counts of oral copulation with a child ten years or younger (California Penal Code section 288.7(b), counts 1 and 2); three counts of aggravated sexual assault of a child (California Penal Code section 269, counts 3, 5, and 6); and three counts of lewd act upon a child by force, violence or duress (California Penal Code section 288(b), counts 7, 8, and 9). Dkt. No. 10-1 at 94-110. The jury acquitted

---

[1] Rosemary Ndoh, the previous warden of Avenal State Prison, where Petitioner is incarcerated, was originally named as the respondent in this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin Gamboa, the current warden of Avenal State Prison, is hereby SUBSTITUTED as respondent in place of Petitioner's prior custodian.

Petitioner of one count of aggravated sexual assault of a child (California Penal Code section 664, count 4), but found him guilty of the lesser included attempt offense (California Penal Code section 269), and also acquitted him of two counts of lewd act upon a child by force (counts 10 and 11). *Id.* at 100-01, 112-113. Counts 1-9 pertained to Alondra Doe, Petitioner's stepdaughter; Counts 10 and 11 pertained respectively to Luis and Alexis Doe, Petitioner's biological sons. Dkt. No. 10 at 134-39. The jury did not make a multiple-victims finding for Counts 7-9. Dkt. No. 10-1 at 106, 108, 110.

On November 10, 2016, the trial court sentenced Petitioner to 75 years to life consecutive to 25 years as follows: seven years on Count 4, three consecutive six-year terms on each of Counts 7-9, and consecutive 15-years-to-life each on Counts 1, 2, 3, 5, and 6. Dkt. No. 10-7 at 147-48; dkt. No. 10-1 at 146-49.

Petitioner filed a timely appeal, arguing (1) that there was insufficient evidence to support the conviction on Count 3 and (2) that the trial court erred in imposing mandatory consecutive sentencing for Counts 1 and 2.[2] Dkt. No. 10-8 at 18, 23. On April 12, 2019, the California Court of Appeal ("state appellate court") affirmed the judgment, rejecting Petitioner's first claim and finding that although the trial court had mistakenly believed that consecutive sentencing was mandatory, remand for resentencing would be "an [i]dle [a]ct" because the trial court indicated its clear intent to otherwise use its discretion to impose consecutive sentencing. Dkt. No. 10-8 at 49, 54, *see also People v. Morales Contreras*, No. H044218, 2019 WL 1578796, at *1, *3-4 (Cal. Ct. App. Apr. 12, 2019). The California Supreme Court summarily denied review on June 19, 2019. Dkt. No. 10-8 at 96.

On August 21, 2020, Petitioner filed the instant habeas petition.

## II. STATEMENT OF FACTS

---

[2] Petitioner also argued on appeal that there was an error in the abstract of judgment. Dkt. No. 10-8 at 27. The state appellate court agreed, and "directed [the trial court] to amend the abstract of judgment to reflect the oral pronouncement of judgment." *Morales Contreras*, 2019 WL 1578796 at *5.

The following background facts are from the opinion of the state appellate court on direct appeal:

> A. was born to mother in June 1998. When A. was about four years old, mother began dating defendant. A year later, in 2003, mother and defendant got married. Defendant, who was born in 1982, was then in his early 20s. Mother and defendant had two sons together.
>
> A. was a 17-year-old recent high school graduate at the time of the June 2016 trial. She testified that defendant had molested her for several years, beginning no later than when she was eight years old. Defendant would touch her vagina with his hand as often as two or three times a week, generally while holding her down with his other hand or his body weight. Defendant began touching A.'s breasts under her clothing when she was 10 years old and in the fifth grade. Defendant also would make A. stroke his penis, lick A.'s vagina once or twice a week, rub his penis in between her butt cheeks, rub his penis on her vagina, and attempt to penetrate her vagina with his penis. He would ejaculate on her after rubbing his penis against her. Defendant would ignore A. when she told him to stop. If she cried, he would cover her face with a pillow or blanket. A. testified that these molestations generally occurred at home in the afternoon before her mother got home, while her brothers were outside or in another room. Two or three times, defendant made A. orally copulate him. He would take her out of the house in the evening (purportedly to run errands), park the car somewhere dark, grab her by the neck or head, and force her mouth onto his penis.
>
> Defendant repeatedly told A. that if she told anyone about the abuse he would go to jail and be separated from her half-brothers. She interpreted those comments as "disguised threat[s]" because she loved her half-brothers.
>
> In 2009, A. told mother about the abuse, but immediately retracted the accusation.1 A. told a close friend about the molestations during the summer of 2012, shortly before she started high school. That friend attended the same high school as A. and told their principal about the abuse after school started in August. A. confirmed that defendant was molesting her when the principal confronted her. The school contacted San Jose Police.
>
> The responding officer interviewed A. at school on August 29, 2012. The officer testified that A. said defendant had been molesting her since before she was eight years old. She said he had touched her breasts and vaginal area with his hand and had rubbed his penis against her vaginal area. She said all these touchings were skin-to-skin. A. also told the officer that defendant had tried to penetrate her vagina with his penis but had failed, had orally copulated her "more than 20 times," and had forced her to orally copulate him two or three times.

3

> A. testified that she saw defendant touch her half-brothers' penises and testicles when the boys were approximately three and eight years old. These touchings occurred when the boys were naked after bathing. She testified that the boys understood it as a joke and would laugh. The older half-brother, L., testified at trial, at which time he was 12 years old. He testified that defendant had touched his penis and testicles more than once, which made him uncomfortable. Defendant would stop when L. told him to. L. testified that he saw defendant touch his younger brother's privates as well. Mother testified that she saw defendant touch L.'s privates a few times. She told him not to do it because, while "it may be normal in Mexico," it wasn't normal here.

*Morales Contreras*, 2019 WL 1578796 at *1–2.

### III.  DISCUSSION

**A.    Legal Standard**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes

in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991).[3] In reviewing each claim, the court must examine the last reasoned state court decision that addressed the claim. *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir. 2013), *amended*, 733 F.3d 794 (9th Cir. 2013).

**B.      Claims and Analyses[4]**

Petitioner claims the following grounds for habeas relief:

(1) the trial court incorrectly imposed consecutive sentencing under state law;

(2) the state appellate court denied him due process by failing to remand the matter after the trial court incorrectly imposed consecutive sentences; and

(3) there was insufficient evidence to support Count 3, aggravated sexual assault of a child, in violation of his right to a fair trial and due process.

Dkt. No. 1 at 5.

**1.      *Consecutive Sentencing***

Petitioner argues that the trial court erred in imposing what it believed was mandatory consecutive sentencing pursuant to California Penal Code section 667.6(d) and section 269 for Counts 1 and 2. Dkt. No. 1 at 5. Petitioner made this argument on appeal. Dkt. No. 10-8 at 23. Respondent agreed that "consecutive sentencing was not mandatory for counts 1 and 2," contrary to what the superior court had ruled. *Id.* at 41-42. The state

---

[3] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker v. Fleming*, 423 F.3d 1085, 1091 n.3 (9th Cir. 2005).

[4] Unspecified statutory references in this section are to the California Penal Code.

5

appellate court noted that "[t]he parties agree that the court was not required to impose consecutive sentences on counts 1 and 2. And they further agree that the court mistakenly believed that sections 667.6 and 269 mandated consecutive sentencing on counts 1 and 2." *Morales Contreras*, 2019 WL 1578796 at *4.

California Penal Code section 667.6(d) reads:

> A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions.
>
> In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions.[5]

Subsection (e) does not list California Penal Code section 288.7, the crime of conviction for Petitioner's Counts 1 and 2. *See* Cal. Penal Code § 667.6(e).

The version of California Penal Code section 269 in effective at the time of Petitioner's sentencing required "a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6" and listed various crimes constituting aggravated sexual assault on a child, when committed against a child 14 years old or younger. Cal. Penal Code § 269 (effective Nov. 8, 2006). It listed "[o]ral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 288a,"[6] but did not list section 288.7. *Id.* Former section 288a and its

---

[5] The version of the statute that was in effect at the time of Petitioner's sentencing was identical with respect to this subsection and similarly did not include section 288.7 as an enumerated offense. *See* Cal. Penal Code § 667.6(d) (effective Nov. 8, 2006).

[6] Section 288a was renumbered and amended as section 287 by S.B. 1494, effective January 1, 2019. The current version of section 269 enumerates section 287 but is otherwise identical to the prior version.

current version, section 287, both address oral copulation involving a minor as young as 14, and the sentencing judge may choose from a range of terms, while section 288.7(b) addresses oral copulation involving a minor as young as 10 and has a mandatory sentence of 15 years to life.

Because neither section 667.6(d)'s nor section 269's sentencing schemes applied to Petitioner's conviction for Counts 1 and 2, the applicable sentencing statute was California Penal Code section 669, which directs the court to determine whether sentences will run concurrently or consecutively and dictates that where the court fails to decide, the sentences run concurrently. California Rule of Court 4.425 identifies "[f]actors affecting the decision to impose consecutive rather than concurrent sentences" including whether the crimes were independent and separate acts, whether they occurred at different times or places, and "[a]ny circumstances in aggravation or mitigation" except a fact used to impose the upper term or otherwise enhance a sentence under California Penal Code section 1170(h), or a fact that is an element of the crime. *See People v. Belmontes*, 34 Cal. 3d 335, 346 (1983) (Rule 425[7] concerns "criteria for deciding between consecutive and concurrent sentences").

The trial court was permitted to impose the sentences for Counts 1 and 2 consecutively or concurrently, and was permitted to examine the same factors required by sections 667.6(d) and section 269 in making that determination. The trial court's only

---

[7] California Rule of Court 4.425 was adopted as Rule 425 effective July 1, 1977. At the time of *Belmontes*, the rule read:

> Criteria affecting the decision to impose consecutive rather than concurrent sentences include: [¶] (a) Facts relating to the crimes, including whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other. [¶] (2) The crimes involved separate acts of violence or threats of violence. [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. [¶] (4) Any of the crimes involved multiple victims. [¶] (5) The convictions for which sentences are to be imposed are numerous. [¶] (b) Any circumstances in aggravation or mitigation."

*People v. Belmontes*, 34 Cal. 3d at 347 n.5.

error of state law was believing that consecutive sentences were mandatory if it determined that the separate counts were sufficiently distinct. The trial court identified the correct factors and expressed its intent to impose the same consecutive sentence whether it was mandatory or otherwise. Petitioner's consecutive sentences did not exceed the bounds of state law nor were they imposed based on inappropriate factors. *C.f. Marzano v. Kincheloe*, 915 F.2d 549, 552 (9th Cir. 1990) (sentence "in excess of the permissible statutory penalty" is unconstitutional). The trial court's error did not constitute federal constitutional error, and habeas relief is not available for this claim. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

### 2. *Failure to Remand for Resentencing*

Petitioner argues that he was denied due process by the state appellate court's failure to remand for resentencing. Dkt. No. 1 at 5. Petitioner argued on direct appeal that his case should have been remanded for resentencing, in light of the trial court's erroneous belief that mandatory consecutive sentencing was required, "to allow the court to properly exercise its discretion." Dkt. No. 10-8 at 25. Petitioner argued that "the sentencing court would have felt differently if it had understood its discretion," because of his lack of criminal record and the great length of the sentence as imposed. *Id.* at 25-26.

At sentencing, the trial court stated:

> I very carefully listened to the evidence in this trial. I listened to the testimony of Alondra, I listened to your testimony, and that of all the other witnesses. And the crimes that you committed against Alondra are horrible, Mr. Contreras.
>
> You have harmed that child in a way that it's not clear if she'll ever be the person that she could have been had you not done the things you did to her. You have taken absolutely no responsibility for your conduct.
>
> You've expressed no remorse and while I respect your decision not to discuss this offense with the probation department, you even used that opportunity to make negative remarks about Alondra. So, I regret that, sir. I do agree with the People that there are many aspects of this case that are aggravated.
>
> In reviewing the circumstances in aggravation, I do note the

> victim was particularly vulnerable. The way she presented in court, the way she described the circumstances, the fact you took advantage of her being alone and not being able to get help from anybody. Taking her out by herself in the dark at night away from her mother.
>
> All of those things placed her in an advanced position of vulnerability, but more significantly, you took advantage of a position of trust of that family, Alondra's mother. They let you into their lives and into their home, and Alondra trusted you as a father and you exploited that trust to use the opportunity to repeatedly have sexual contact with this girl for purposes of your own sexual gratification.
>
> You have engaged in violent conduct, because the jury has convicted you of forcible sexual assault that do[es] indicate a danger to society, a danger to others. I only find one circumstance in mitigation, and that is the fact that you have no prior record, which your attorney has discussed here.
>
> So certainly, the aggravating factors outweigh the mitigating factors. Nevertheless, I will follow the recommendation of the probation officer and I will impose the midterms in this case. I do believe that the court must impose full consecutive sentencing in this case because these are forcible sexual offenses. But even if the court were not required to do so, full consecutive sentencing is appropriate in this court's—from this court's point of view because each of these acts involves a separate act of violence on the same victim.
>
> They clearly occurred on separate occasions, with a different motivation to molest Alondra on yet another occasion, but they were separated by time and the molests that were charged in this case span over a period of years. I do find these are separate acts of violence that occurred on separate occasions against the same victim.
>
> And pursuant to 667.6 and also 269(d), the statutes are clear that the court should impose full, consecutive sentencing in this case. And I want to emphasize, even if the court does have discretion as [defense counsel] has recommended that I impose [con]current sentencing, that is not appropriate in this case for the reasons I've indicated.

Dkt. No. 10-7 at 145-47.

The state appellate court rejected Petitioner's claim that remand was necessary. The court noted that remand would be an "idle and unnecessary, if not pointless, judicial exercise" because the trial court "twice stated that if it had the discretion to impose concurrent sentences it would nevertheless impose full, consecutive sentences." *Morales Contreras*, 2019 WL 1578796 at *4. And the appellate court noted that the trial court

9

identified "factors supporting the imposition of consecutive rather than concurrent sentences," including that the acts occurred on separate occasions and involved "different motivation[s]." *Id.* The court concluded: "it is clear the court would impose consecutive sentences on counts 1 and 2 if we remanded the matter; therefore, we decline to do so." *Id.*

In his petition for review, Petitioner argued that the appellate court's failure to remand constituted a violation of his right to due process:

> [T]he Court of Appeal, in failing to remand for resentencing, improperly exercised the discretion granted by the Legislature to the sentencing court. By doing so, the Court of Appeal arbitrarily deprived petitioner of his state created liberty interest in not being subjected to discretionary consecutive sentencing absent the sentencing court's exercise of informed discretion in doing so, in violation of his Fourteenth Amendment right to due process.

Dkt. No. 10-8 at 82. Petitioner cited *Hicks v. Oklahoma,* 447 U.S. 343 (1980).

Petitioner also argued that the trial court's imposition of middle rather than maximum terms demonstrated its choice not to impose the harshest sentence within its discretion, and that it therefore likely took into account its belief that consecutive sentences were mandatory. Dkt. No. 10-8 at 81. For example, the trial court "might have . . . imposed aggravated terms but run them concurrently." *Id.*

Only the California Supreme Court had the opportunity to address Petitioner's due process claim regarding the state appellate court's failure to remand, and it issued a summary denial. Where there is no reasoned state-court opinion as to a particular claim, this Court "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Generally, a challenge to a state court's application of state sentencing laws does not create a federal question cognizable on federal habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Campbell v. Blodgett*, 997 F.2d 512, 522-24 (9th Cir.1992). "Absent a showing of fundamental unfairness, a state court's misapplication of its own

sentencing laws does not justify federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). In addition, "[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). *See also Ramirez v. State of Ariz.*, 437 F.2d 119, 120 (9th Cir. 1971) ("Cumulation of sentences is a matter of state policy" and raises no federal question).

But there is a federal due process interest in state sentencing procedures. *See Hicks*, 447 U.S. at 346 (due process was violated where state habitual offender provision with mandatory 40-year sentence was declared unconstitutional by state supreme court, but state court affirmed sentence because it was within the range available to the jury to impose of "not less than ten" years). *Hicks* held that a defendant "has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion . . . and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State." *Id.* The holding in *Hicks* depended on the fact that in Oklahoma only the jury could impose punishment. *Clemons v. Mississippi*, 494 U.S. 738, 746-47 (1990). *Hicks* applies only where state law creates an "entitlement." *Id.* at 747.

Here, Petitioner has not demonstrated any sort of fundamental unfairness in the state appellate court's decision not to remand his case for resentencing such that his right to due process was violated. He did not have a state-created liberty interest in automatic remand for a sentencing error, because there is no state law in California requiring such remand for all sentencing-related errors. *See Belmontes*, 34 Cal.3d at 348 n.8 (defendants who had been charged under one sentencing statute instead of another by judges who did not understand their discretion to choose between the two not entitled to remand where "the sentencing court clearly indicated that it would not have exercised discretion to sentence under [the more lenient scheme] even if it had been aware that it had such discretion").

Nor does Petitioner's case involve an entitlement to sentencing by a jury, like in

*Hicks*, rather than a reviewing court. The trial court judge selected Petitioner's sentence, and clearly indicated that it would have chosen the same sentence even if it had a more lenient option available to it. Contrary to Petitioner's claim, the trial court imposed the midterm rather than maximum sentences not to balance out the consecutive sentences but in recognition of the lone mitigating factor it recognized in Petitioner's case, his lack of prior record. Due process does not require a remand in these circumstances. *See also Amparan v. Spearman*, No. 18CV2522-BTM (WVG), 2020 WL 2306442, at *5 (S.D. Cal. May 8, 2020) (no federal habeas claim where state judge made factual error leading her to believe consecutive discretion was mandatory, but she had discretion to impose consecutive sentencing, and appellate court did not remand); *Nguyen v. Hernandez*, No. CV 06-4260GAFMAN, 2009 WL 2448133, at *6 (C.D. Cal. Aug. 7, 2009) (state appellate court's decision, based on harmless error analysis, not to remand where trial court made a sentencing error was not a due process violation).

This finding is bolstered by the federal criminal context. In the wake of *United States v. Booker*, 543 U.S. 220 (2005), which made the federal sentencing guidelines advisory instead of mandatory, remand was only available for pre-*Booker* sentencing where "the record [wa]s insufficiently clear to conduct a complete plain error analysis." *United States v. Ameline*, 409 F.3d 1073, 1074 (9th Cir. 2005). The Ninth Circuit, among other circuits, implemented a limited remand to address the problem that "in the overwhelming majority of cases, we simply do not know whether the sentencing judge would have imposed the same sentence had he known that the sentencing guidelines were advisory, rather than mandatory." *Id.* at 1080. The limited remand allowed the district court to inform the Ninth Circuit whether it "would have imposed a materially different sentence . . . had it known that the Guidelines were advisory." *Id.* at 1083. But "the limited remand is invoked only when it cannot be determined from the record whether the judge would have imposed a materially different sentence had he known that the Guidelines are advisory rather than mandatory." *Id.* In other words, where the record in front of the reviewing court demonstrated that the sentencing judge would have imposed

the same sentence pursuant to advisory guidelines, remand was not required.

Here, the trial court's error was perceiving the consecutive sentencing to be mandatory rather than within its discretion. The state appellate court's decision to conduct a prejudice or harmless error analysis with respect to Petitioner's sentence, rather than remanding, was similar to the post-*Booker* procedures implemented by many federal circuits, and therefore could not have been an unreasonable application of clearly established federal law. Nor was its prejudice analysis unreasonable in light of the trial court's clear statement that it would have imposed consecutive sentences on Petitioner even if it were not mandatory.

The California Supreme Court's rejection of Petitioner's due process claim with respect to the state appellate court's failure to remand for resentencing was not inconsistent with federal law, and habeas relief is not available for this claim.

### 3. *Insufficient Evidence*

Petitioner argues that he was convicted on Count 3 (aggravated sexual assault by rape of a child under 14 years of age and 7 years younger than defendant, California Penal Code section 269(a)(1)) without sufficient evidence, violating his right to a fair trial and due process. Dkt. No. 1 at 5. He made this argument on direct appeal, arguing that the conduct described by Alondra Doe did not meet the statutory definition of the crime because California Penal Code section 263 requires "[a]ny sexual penetration, however slight . . . to complete the crime" of rape. Dkt. No. 10-8 at 18; Cal. Penal Code § 263. He argued that there was insufficient evidence of penetration, negating the element of sexual intercourse.

California Penal Code section 261 defines rape in violation of section 269(a)(1) of a child under 14 as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator" that is "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another" or "accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the

13

perpetrator will execute the threat." Cal. Penal Code § 261(a)(2), (6).

The state appellate court identified the elements of the crime as "(1) sexual intercourse with a non-spouse; (2) against the victim's will by 'force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another'; (3) a victim under 14 years old; and (4) a defendant at least 7 years older than the victim." *Morales Contreras*, 2019 WL 1578796 at *3.

The state appellate court rejected Petitioner's claim, noting that "[v]aginal penetration is not necessary to commit a rape," *Morales Contreras*, 2019 WL 1578796 at *3, and that "[p]enetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina." *Id.* (quoting *People v. Karsai*, 131 Cal. App. 3d 224, 232, disapproved on other grounds by *People v. Jones*, 46 Cal. 3d 585, 758 (1988)). The court also referenced Judicial Council Of California Criminal Jury Instruction 1000 defining sexual intercourse as "any penetration, no matter how slight, of the vagina or genitalia by the penis."

The state appellate court analyzed the evidence:

> A. testified that defendant would rub the head of his penis up and down against her vagina, making skin-to-skin contact, and then try to penetrate her vagina. He was never successful in penetrating her vagina because she would move or shift under him. During these incidents, defendant generally would hold his penis with one hand and hold her down with the other and continue until he ejaculated. A. answered "yes" when the prosecutor asked whether the lips of her vagina was "where [defendant] would rub his penis." Officer Moro testified that A. told him that defendant had rubbed his penis in her vaginal area and attempted unsuccessfully to penetrate her approximately 10 times.
>
> Jurors reasonably could have inferred from the foregoing evidence that defendant's penis penetrated, however slightly, the lips of A.'s vagina as he attempted to penetrate her. Defendant's contention that the evidence gives rise to an inference that he rubbed his penis against only the outside of A.'s labia is, arguably, at odds with common sense and basic anatomy. But even assuming his alternative interpretation of the evidence is reasonable, that does not compel reversal.

*Morales Contreras*, 2019 WL 1578796 at *3.

14

The state appellate court's holding was not an incorrect or unreasonable application of clearly established federal law or an unreasonable determination of facts in light of the evidence.[8]  A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510 U.S. 843 (1993).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Payne*, 982 F.2d at 338 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation.  *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338.

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n.16; *see Emery v. Clark*, 643 F.3d 1210, 1214-1216 (9th Cir. 2011) (evaluating sufficiency of evidence under state court's interpretation of requirements for gang enhancement).  "When assessing a petition for a writ of habeas corpus, we thus 'look to [state] law only to establish the elements of [the crime] and then turn to the federal question of whether the [state] court was objectively unreasonable in concluding that sufficient evidence supported [its decision].'"  *Johnson v. Montgomery*, 899 F.3d 1052, 1056 (9th Cir. 2018) (alterations in original).

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson*, 443 U.S. at 326.  The court may not substitute its judgment for that

---

[8] Petitioner invoked federal due process on direct appeal.  *See* Dkt. No. 10-8 at 20.  Although the state appellate court did not explicitly reference due process with respect to Petitioner's sufficiency of the evidence claim, the court's treatment of the claim and identification of the legal principles matches the federal standard.  *See Morales Contreras*, 2019 WL 1578796 at *3.

of the jury. *See Coleman v. Johnson*, 566 U.S. 650, 655-56 (2012) (finding 3rd Circuit erred in finding that there was no reasonable basis for the jury's conclusion that petitioner had a specific intent to kill victim and force was used simply because there was no testimony describing physical action by petitioner).

Here, the state appellate court's determination that there was sufficient evidence to establish the element of intercourse, because the jurors could have inferred penetration of the external genital organs based on Alondra Doe's testimony about Petitioner's conduct, was reasonable. Petitioner's right to due process was not violated, and habeas relief is not available for this claim.[9]

## IV. CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall enter judgment in favor of Respondent and close the file.

Additionally, the clerk is directed to substitute Martin Gamboa on the docket as the respondent in this action. *See supra* at 1, fn. 1.

---

[9] Petitioner states in his traverse that he "contend[]s the unconstitutional excessive sentence . . . was not fair." Dkt. No. 11 at 2. Petitioner did not present a claim that his sentence was unconstitutionally excessive to the state courts, and it is unexhausted. In addition, "[a] Traverse is not the proper pleading to raise additional grounds for relief." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). The Court will not exercise its discretion to address these new claims. *See, e.g., Jackson v. Roe*, 425 F.3d 654, 662, 655 n.1 (9th Cir. 2005).

**IT IS SO ORDERED**.

Dated: __December 29, 2021___

_____
BETH LABSON FREEMAN
United States District Judge